UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBEKA RODRIGUEZ, BIANCA GARCIA, BARBARA WAINWRIGHT AND TOMMY PURSCELLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ENDURANCE WARRANTY SERVICES, L.L.C., an Illinois entity,<br><br>Defendant. | Case No.:  3:25-cv-02694-GPC-KSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR STRIKE**<br><br>**[ECF No. 10]** |

Before the Court is Defendant's motion to dismiss or, in the alternative, to strike Plaintiffs' First Amended Complaint. ECF No. 10. The motion to dismiss or strike has been fully briefed. ECF Nos. 12, 13. On March 27, 2026, the Court held a hearing on this matter. ECF No. 15. For the reasons below, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss.

/ / /

/ / /

1

## FACTUAL BACKGROUND

Defendant Endurance Warranty Services, LLC ("Defendant") is an Illinois business that sells vehicle service contracts and auto warranties. ECF No. 8 ("FAC") ¶¶ 1, 5. Plaintiffs allege that Defendant "specializes in high-pressure sales tactics" and markets its contracts through "aggressive, urgency-driven solicitations designed to trick unwary consumers into purchasing costly and unnecessary extended auto warranties." *Id*. ¶ 1. Defendant has been subject to federal and state regulatory action and is a known "prolific spammer." *Id*. ¶¶ 1, 2. Plaintiffs estimate that Defendant "is responsible for over 100,000 spam emails to Californians each year." *Id*. ¶ 15.

Plaintiffs Rebeka Rodriguez, Bianca Garcia, Barbara Wainwright, and Tommy Purscelley (collectively, "Plaintiffs") were all recipients of "spam mail promoting Defendant's products." *See id*. ¶¶ 8-11. Specifically, Plaintiff Rebeka Rodriguez ("Rodriguez") received an email from DEfQ5@kpyjas.cl with a subject line stating, "Congrats! REBEKA.JOHANNA23 -You're Eligible For Discounted Pricing!" *Id*. ¶ 8. Plaintiff Bianca Garcia ("Garcia") received the email from ey8151b@b1d.burgundyteapot.com with a subject line stating, "Endur a nce P r o m o - $300  o ff  a ny n e w plan." *Id*. ¶ 9 (spacing in original). Plaintiff Barbara Wainwright ("Wainwright") received the email from enduranceautowarranty@martingifts.com with a subject line stating, "Your Endurance Auto Protection Offer - $300 off any new policy." *Id*. ¶ 10. Finally, Plaintiff Tommy Purscelley ("Purscelley") received the email from operations@financial-wellness-tips.com with a subject line of "Dear MR. PURSCELLEY, You're eligible for discounted pricing 🥳 �" *Id*. ¶ 11.

After receiving the emails, "each Plaintiff searched the publicly available WHOIS database to identify the sender associated with the domain used in the various "From" fields." *Id*. ¶ 12. However, no plaintiff succeeded as "none of the sending domains were registered to, publicly associated with, or traceable to Defendant through WHOIS or any

3:25-cv-02694-GPC-KSC

other public registry." *Id*. Additionally, when each Plaintiff followed the link from the email and were directed to Defendant's website, the advertised price reduction could not be found. *Id*. ¶ 13.

None of the Plaintiffs consented to receiving commercial email advertisements from Defendant or its marketing agents. *Id*. ¶ 18. However, each Plaintiff has received multiple similar and unwanted emails from Defendant. *Id*. ¶ 15.

## PROCEDURAL HISTORY

On November 10, 2025, Plaintiff Rebeka Rodriguez filed a class action complaint against Defendants. ECF No. 1. On December 31, 2025, Plaintiffs filed their First Amended Complaint ("FAC"). ECF No. 10. The FAC alleges Defendant violated the Cal. Bus. & Prof. Code § 17529 with its advertising emails by using a domain name without authorization, using misrepresented header information, and supplying a deceptive subject line. *Id*. ¶¶ 19-23, 32-36. Defendant moves to dismiss the FAC for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6) and, alternatively, moves to strike the FAC under Federal Rule of Civil Procedure 12(f). ECF No. 10 ("Mot.") at 9-24.[1]

## LEGAL STANDARD

### I.   Motion to Dismiss: Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint and whether it has "state[d] a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

---

[1] Throughout the order, the pagination for docketed documents is derived from the numbering generated by the ECF system.

3:25-cv-02694-GPC-KSC

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains factual matter that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is facially plausible when the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In reviewing the plausibility of a complaint, courts must "accept factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Dent v. Nat'l Football League,* 968 F.3d 1126, 1130 (9th Cir. 2020).  But courts do not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023).  Ultimately, the court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## II.   Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  A matter is redundant if it "consists of allegations that constitute a needless repetition of other averments or which are foreign to the issue." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005); *see Sliger v. Prospect Mortg., LLC*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011) (similar).  An immaterial matter lacks "any logical connection with the consequential facts." *Immaterial*, *Black's Law Dictionary*, (11th ed. 2019); *see*

3:25-cv-02694-GPC-KSC

*Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) ("An 'immaterial' matter has no essential or important relationship to the claim for relief or defenses pleaded."). Impertinent matters have "no substantial relation to the action, and will not affect the court's decision." *Irrelevant*, *Black's Law Dictionary* (11th ed. 2019) (entry for "Impertinent" directs to "Irrelevant"); *see Cortina*, 94 F. Supp. 3d at 1182 ("An 'impertinent' allegation is neither necessary nor relevant to the issues involved in the action."). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial…" *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds* 510 U.S. 517 (1994)).

"Motions to strike are 'generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.'" *Cortina*, 94 F. Supp. 3d at 1182 (quoting *Rosales v. Citibank,* 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)). As such, "motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsys., Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). "Courts will not grant motions to strike unless 'convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed.'" *Novick v. UNUM Life Ins. Co. of America*, 570 F. Supp. 2d 1207, 1208 (C.D. Cal. 2008) (quoting *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005)). The Court must "view the pleading under attack in the light most favorable to the pleader." *Id*. (quoting *RDF Media*, 372 F. Supp. 2d at 561).

**DISCUSSION**

Defendant moves to dismiss under Rule 12(b)(6). Mot. at 11-23. Defendant also moves to strike in the alternative. *Id*. at 24.

3:25-cv-02694-GPC-KSC

## I.    Motion to Dismiss

Plaintiffs' FAC alleges that Defendant's marketing emails violated each of the three sections of § 17529.5(a). Defendant moves to dismiss each of the three claims on the grounds that: (1) the §§ 17529.5(a)(1), (a)(2) claims are preempted by the CAN-SPAM Act and (2) the §§ 17529.5(a)(1)-(3) theories are deficient under the state statute.

Under Cal. Bus. & Prof. Code § 17529.5, "[i]t is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:

(1) The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party.

(2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information. This paragraph does not apply to truthful information used by a third party who has been lawfully authorized by the advertiser to use that information.

(3) The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."

Cal. Bus. & Prof. Code § 17529.5(a).

### a.    CAN-SPAM Act Preemption

The CAN-SPAM Act was enacted in response to mounting concerns associated with the growth of spam emails and provides a code of conduct to regulate commercial e-mail messaging practices. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047-48 (9th Cir. 2009). As part of this nationwide regulation effort, the statute expressly "supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a

6

3:25-cv-02694-GPC-KSC

commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). It specifically does not preempt "(A) State laws that are not specific to electronic mail, including State trespass, contract, or tort law; or (B) other State laws to the extent that those laws relate to acts of fraud or computer crime." *Id*. § 7707(b)(2).

In essence, while the CAN-SPAM Act broadly preempts state regulation of commercial emails, it also carves out an exception for "state laws that proscribe 'falsity or deception' in commercial e-mail communications." *Gordon*, 575 F.3d at 1061. State laws that proscribe falsity or deception refer to those that "extend traditional tort theories." *Id*. at 1063. In other words, one can escape CAN-SPAM preemption if "the false or deceptive information in a commercial email [is] material." *Silverstein v. Keynetics Inc.*, 192 F. Supp. 3d 1045, 1048 (N.D. Cal. 2016), *aff'd*, 727 F. App'x 244 (9th Cir. 2018). In contrast, a state law claim based on mere technical and immaterial allegations of header deficiencies are not encapsulated in traditional tort theories and would, thus, be preempted. *Gordon*, 575 F.3d at 1064; *Asis Internet Servs. v. Member Source Media, LLC*, No. 08-CV-1321-EMC, 2010 WL 1610066, at *2 (N.D. Cal. Apr. 20, 2010).

Defendant contends that Plaintiffs' Section 17529.5(a)(1) and (a)(2) theories find no basis in traditional tort theories and amount only to technical allegations. Mot. at 15, 18. Plaintiffs, in response, maintain that their claims are not preempted and all of the Defendant's cited cases are distinguishable. *See* ECF No. 12 ("Opp.") at 5-9.[2]

---

[2] Throughout its opposition, Plaintiffs cite to state court decisions regarding preemption based on the CAN-SPAM Act. *See* Opp. at 10-16. Plaintiffs even go as far as to argue that the decisions of the state appellate court are binding upon this court. *Id*. at 12.

The Court disagrees. In matters of state law interpretation, "a federal court is bound by the decision of the highest state court." *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990). However, in matters of federal law, a federal district court is only bound by its regional circuit court or Supreme Court precedent. *See Hutto v. Davis*, 454 U.S. 370, 375

3:25-cv-02694-GPC-KSC

### i.    Section 17529.5(a)(1): Domain Name

Section 17529(a)(1) is violated when "[t]he e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party." Cal. Bus. & Prof. Code § 17529.5(a)(1). Plaintiffs allege that Section 17529.5(a)(1) was violated because the emails "advertise Defendant's products using domain names that were neither owned by, registered to, nor authorized by Defendant, thereby misrepresenting the identity of the sender." FAC ¶ 19. In turn, Defendant contends that the FAC fails to plead a violation of subsection (a)(1) with specificity and that the use of these third-party domain names is not materially false or misleading within the meaning of the CAN-SPAM Act, preempting the claim. Mot. at 14-17.

This subsection focuses on use of a third-party's domain name without the permission of the third-party.  Here, Plaintiffs merely allege in a conclusory fashion that Defendant "used third-party or fabricated domain names without authorization." FAC ¶ 19. There are no factual allegations that identify the third-party owner or registrant of the domain name or support the claim that the domain name was used without authorization to permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Plaintiffs argue that they have provided enough facts at this stage because Rule 9(b) "may be relaxed as

---

(1982) ("'[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts…'").

"Preemption is a question of federal law." *Local Union 598 v. J.A. Jones Constr. Co.*, 846 F.2d 1213, 1218 (9th Cir. 1988). Accordingly, this Court is only bound by the caselaw of the Ninth Circuit on this preemption issue, not that of state courts. *See Insolvency Servs. Grp., Inc. v. Fed. Express Corp.*, No. 14-CV-01525-RGK-SSX, 2014 WL 12613262, at *2 (C.D. Cal. May 7, 2014) ("However, federal courts are bound by federal court precedent regarding federal preemption of a state statute because preemption is an issue of federal law.").

3:25-cv-02694-GPC-KSC

to matters within the opposing party's knowledge". *Moore v. Kayport Package Express, Inc.*, 885 F. 2d 531, 540 (9th Cir. 1989). Such an exception exists where "the plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing." *Zatkin v. Primuth*, 551 F.Supp. 39, 42 (S.D.Cal.1982). In such cases, the particularity requirement may be satisfied if the allegations are accompanied by a statement of the facts upon which the belief is founded. *Id.* In this case, Plaintiffs' allegations fail to state the facts that support their belief that Defendant used the domain of a third-party without permission, and, thus, fail to satisfy even the relaxed standard that the Ninth Circuit recognized in *Moore*.

With respect to preemption, in making its argument, Defendant relies on *Silverstein*. *Silverstein* involved commercial emails sent by nonexistent or "spoofed" identities from the linkedin.com domain, which were not authorized or sent by LinkedIn itself. *Silverstein v. Keynetics Inc.*, 192 F. Supp. 3d 1045, 1046 (N.D. Cal. 2016), *aff'd*, 727 F. App'x 244 (9th Cir. 2018). The court held that the use of the domain names "do not falsely or deceptively misrepresent the domain from which the emails actually traveled." *Id.* at 1050-51. As affirmed by the Ninth Circuit, "Silverstein at most has alleged that other LinkedIn users violated the terms of LinkedIn's user agreement by using the LinkedIn domain to contact him and other group members with unauthorized spam or advertising. However, the senders' conduct does not make use of the LinkedIn domain name materially false or misleading because the e-mails did come from a LinkedIn member." *Silverstein v. Keynetics, Inc.*, 727 F. App'x 244, 246 (9th Cir. 2018). Thus, Defendant argues that this claim is preempted because it relies on a technical allegation about the identity of the sender rather than a material deception. Mot. at 15.

In response, Plaintiffs attempt to distinguish *Silverstein*. Specifically, where the plaintiff in *Silverstein* had admitted that all emails were sent from the identifiable linkedin.com, Plaintiffs argue that they do not make a similar concession. Plaintiffs do

9

3:25-cv-02694-GPC-KSC

not concede that the emails at issue were sent from the identified third-party domains. Opp. at 7-8.

However, despite not making that concession, Plaintiff's argument is unavailing because Plaintiffs have failed to allege that any use of third-party domains was materially deceptive. The fact that the *Silverstein* plaintiff admitted that the email was from linkedin.com was important in that case because LinkedIn has a well-known reputation and identifiable brand that could potentially be misappropriated. *Silverstein.*, 192 F. Supp. 3d at 1050. By admitting that the emails were sent from linkedin.com, the plaintiff eliminated the argument that the defendant was only "appearing" to be LinkedIn and taking advantage of the company's goodwill to deceive those who received the email. *See id.* ("Plaintiff also does not allege that the headers were deceptive because the emails *appeared to come* from the linkedin.com domain, for, as Plaintiff concedes, all of the emails *did come* from the linkedin.com domain."). Thus, the conclusion in *Silverstein* did not depend on the plaintiff's concession. It turned on whether the use of the domain itself was *materially* false or misleading.

Here, the FAC alleges that the use of third-party domain names concealed Defendant's identity, gave the false impression that the message originated from an independent entity, and paired the Defendant's brand name with a wholly unrelated domain. FAC ¶ 19. Within these allegations, Plaintiff's refusal to concede does not create the same effect as *Silverstein*. Plaintiffs have not alleged that the third-party domains used in this case (e.g., "kpyjas.cl," "b1d.burgundyteapot.com," "martingifts.com," and "financial-wellness-tips.com") have a similar brand goodwill that was misappropriated. Instead, by not conceding, Plaintiffs have merely maintained the allegation that the use of the domain names was without the permission of the third parties. While Defendant allegedly used a third-party domain without permission and masked its identity in the process, that alone does not establish that the use of the domains was materially false or

3:25-cv-02694-GPC-KSC

misleading to the parties receiving the emails. It, instead, indicates a technical violation that does not overcome the preemption bar.

Without more, the simple use of a third-party domain alone does not rise to the level of "traditionally tortious or wrongful conduct." *Gordon*, 575 F.3d at 1062 (quoting *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006)); *Silverstein*, 727 F. App'x at 246. Thus, this claim is preempted by the CAN-SPAM Act.

### ii.   Section 17529.5(a)(2): Headers

Section 17529.5(a)(2) is violated when "[t]he e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information." Cal. Bus. & Prof. Code § 17529.5(a)(2). Header information constitutes "the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message." 15 U.S.C. § 7702(8).[3]

In this instant case, the FAC alleges that the header information from Defendant's advertising emails is "misrepresented because it does not accurately or truthfully identify the person or entity who initiated and benefited from the email." FAC ¶ 19. However, Defendant argues that this theory of recovery is preempted by the CAN-SPAM Act

---

[3] This definition is from the federal CAN-SPAM Act. The California statutes do not define "header information" in the context of Section 17529.5(a)(2). However, a similar definition to the CAN-SPAM Act was proposed, but not adopted, for Section 17529.5(a)(2). *Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334, 340 n.5 (2010); *see* Cal. Sen. Bill No. 12 (2003–2004 Reg. Sess.) § 1, as amended June 26, 2003 ("'Header information' means the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address").

because (1) Plaintiffs do not allege they were actually deceived and (2) the allegations amount to "technical allegations" with no basis in traditional tort theories. Mot. at 18.

Defendant's first argument is unpersuasive. "[R]eliance and damages [under Section 17529] need not be demonstrated to save a lawsuit from preemption." *Asis Internet Servs. v. Member Source Media, LLC*, No. 08-CV-1321 EMC, 2010 WL 1610066, at *3 (N.D. Cal. Apr. 20, 2010); *see Hoang v. Reunion.com, Inc.*, No. 08-CV-3518 MMC, 2010 WL 1340535, at *6 (N.D. Cal. Mar. 31, 2010) ("Accordingly, the Court finds plaintiffs' failure to allege they relied to their detrimental on the alleged false statements in defendant's e-mails does not constitute a ground for dismissal of their claims.").

However, Defendant's second argument as to technical violations finds support in *Gordon*. Here, Plaintiffs have alleged that the domains of these emails do not facially identify Defendant, are not registered to Defendant, and do not identify Defendant with a WHOIS search. FAC ¶¶ 12, 19.

In *Gordon*, the Ninth Circuit found "nothing inherently deceptive in [the defendant's] use of fanciful domain names." *Gordon*, 575 F.3d at 1063. The domains were properly registered to the defendant, and a WHOIS search accurately identified the defendant as the domain registrant. *Id*. at 1064. Thus, there was no showing that the defendant's practice was "aimed at misleading recipients as to the identity of the sender." *Id*. Instead, the plaintiff's claim, at best, offered incomplete or less than comprehensive information about the sender. *Id*.

While the domains are not properly registered under Defendant unlike in *Gordon* and the "From" names do not expressly identify Defendant, "it is difficult to see how Plaintiffs could allege deception given that, as in *Silverstein*, the combination of the sender name and the subject line make apparent to any reasonable person the exact nature of the email." *Andrews v. Conversion Squared Corp.*, No. 20-CV-00247-JLS-JDE, 2020

12

WL 3978063, at *2 (C.D. Cal. May 8, 2020); *see Silverstein v. Keynetics Inc.*, No. 16-CV-00684-DMR, 2016 WL 7475616, at *4 (N.D. Cal. Dec. 29, 2016), *aff'd*, 727 F. App'x 244 (9th Cir. 2018). The header information of Defendant's marketing emails would only indicate that the sender was an unknown person, while the subject line makes clear that the email is an advertisement. Plaintiffs do not clarify how the header information within that context could plausibly deceive a reasonable person. For example, "[t]his is not a situation where, *e.g.,* the recipient receives an e-mail indicating the sender was an actual person known to the recipient, but, in fact, was sent by an advertiser." *Asis,* 2010 WL 1610066, at *4 (citing *Hoang*, 2010 WL 1340535, at *6). Thus, rather than alleging material deception, Plaintiff alleges a variety of forms of missing information, which would not escape preemption under the CAN-SPAM Act. *Andrews*, 2020 WL 3978063, at *2.

Plaintiffs, however, maintain that this Court should adopt the persuasive holdings of *Balsam v. Trancos, Inc.*, 203 Cal.App.4th 1083 (2012). Opp. at 10-12. In *Balsam*, the defendant used domain names that did not represent a real company and could not be readily traced back to the defendant. *Id*. at 1096. Additionally, "[i]t was undisputed [the defendant] intentionally used only privately registered, meaningless domain names in order to prevent e-mail recipients from being able to identify it as the sender, or to contact it except by sending a blind reply e-mail to an address the sender would have no way of linking to [the defendant]." *Id*. Based on that, the court held that "header information in a commercial e-mail is falsified or misrepresented for purposes of section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual sender on its face *nor* is readily traceable to the sender using a publicly available online database such as WHOIS." *Id*.

Plaintiffs contend that the facts in this case are comparable to *Balsam*. The domain names are privately registered, do not identify the actual sender, and are not identified in

3:25-cv-02694-GPC-KSC

a WHOIS search. Opp. at 11. Because the domain names were not traceable, Plaintiffs argue that the domains were designed to prevent recipients from identifying the emails' true senders and are, thus, a material deception. *Id*.

However, beyond the conflict this interpretation creates with *Gordon*, this reading of *Balsam* ignores distinguishable facts. *Balsam* based its ruling on the lack of total traceability between the domain names and the defendant. Specifically, "[b]ecause [the defendant] hides its identity behind an impenetrable shield of made-up names, an aggrieved recipient cannot look up public information about [its] business, cannot find its Web site, cannot call and speak to [its employees], cannot write to [its CEO], cannot report [defendant] to the Better Business Bureau or the Attorney General, and cannot warn others about [defendant] by writing a letter to a newspaper or posting a complaint on the Internet." *Id*. at 1099. When making these findings, the court explicitly "express[ed] no judgment about other circumstances in which...the presence of other information identifying the sender in the body of the e-mail could affect liability under the statute." *Id*. at 1101 n. 17. The California Court of Appeal later distilled this reflection by holding in *Rosolowski v. Guthy–Renker LLC*, 230 Cal.App.4th 1403, 1407 (2014) that "a header line does not misrepresent the identity of the sender merely because it does not identify the official name of the entity which sent the e-mail, or merely because it does not identify an entity whose domain name is traceable from an online database, provided the sender's identity is readily ascertainable from the body of the e-mail."

In contrast, the From Name, in this instant case, that accompanied at least one of the emails identified "Endurance_Auto." Mot. at 8. Additionally, in *every* email, the body of the email identifies Defendant. Plaintiffs cannot go as far as *Balsam* and argue that Defendant was totally untraceable within the full context of the email. Thus, even using *Balsam*, this argument fails.

14

Accordingly, this claim is preempted by the CAN-SPAM Act.

### b.  Failure to State a Claim: Section 17529.5(a)(3)

Section 17529.5(a)(3) is violated when "[t]he e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." Cal. Bus. & Prof. Code § 17529.5(a)(3). Thus, § 17529.5(a)(3) turns on "whether the subject line might in fact lead a reasonable person to expect something materially different than the message's actual content or subject matter." *Asis Internet Servs. v. Subscriberbase Inc.*, No. 09-CV-3503-SC, 2010 WL 1267763, at *5 (N.D. Cal. Apr. 1, 2010); *Chin v. Evergreen Freedom Found.*, 764 F. Supp. 3d 924, 933 (C.D. Cal. 2025) ("Based on the facts presented in that case, *Rosolowski* does not stand for the proposition that the body of the email can cure anything misleading in the subject line. Rather, the issue in that case was whether the subject line accurately conveyed the body of the email."). In determining whether the subject lines were materially misrepresented, the message's content or subject matter includes consideration of "the body of an email or a hyperlinked page." *Subscriberbase*, 2010 WL 1267763, at *5.

Whether a reasonable consumer is likely to be deceived by a defendant's subject lines is "clearly a question of fact, which is best left for a jury, unless '[n]o reasonable trier of fact could conclude otherwise.'" *Id*. at *2 (quoting *Colgan v. Leatherman Tool Group, Inc.,* 135 Cal.App.4th 663, 682 (2006)). Accordingly, at the motion to dismiss stage, a defendant has "the relatively heavy burden of persuading this Court that no reasonable fact finder could conclude that the email subject lines were 'likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.'" *Id*. at *3 (quoting Cal. Bus. & Prof. Code § 17529.5(a)(3)).

3:25-cv-02694-GPC-KSC

Defendant argues that Plaintiffs do not sufficiently allege that the subject lines of Defendant's advertising emails are materially misleading as to the message's content or subject matter, especially given example emails are not included in the FAC. Mot. 19-23; ECF No. 13 ("Rep.") at 9. In response, Plaintiffs contend that Defendant's interpretation of the statute is too narrow and excludes the meaning of "subject matter," and that whether reasonable consumers might be misled is a triable issue of fact. Opp. at 16-23.

Here, each of the four subject lines advertises a special discount. Specifically, the subject lines include:

- "Congrats! REBEKA.JOHANNA23 – You're Eligible For Discounted Pricing!"

- "Endur a nce  P r o m o  – $300  o ff  a ny n e w plan"

- "Your Endurance Auto Protection Offer – $300 off any new policy"

- "Dear MR. PURSCELLEY, You're eligible for discounted pricing 🎉 �"

FAC ¶ 19. Additionally, in the Plaintiffs' original complaint,[4] one of the emails was supplied and stated: "Protect Your Car and Your Wallet: Save $300 on a Vehicle Protection Plan! Sign up for a comprehensive vehicle protection plan and get $300 off any policy." ECF No. 1 at 2. From this, the FAC alleges that the subject lines were misleading because they falsely suggest a reduced price based on individualized criteria when no discount exists. *See* FAC ¶¶ 13, 19.

---

[4] A court may take judicial notice of "matters of public record," including its own records. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001). Because Plaintiffs "swore to [the original complaint's] veracity" and "does not challenge the [email's] authenticity," and "because any subsequent complaint must only allege facts consistent with prior pleadings," the court will take judicial notice of the original complaint. *Wong v. Flynn-Kerper*, No. 18-cv-04468-SJO-AFM, 2019 WL 4187375, at *4 & n.2 (C.D. Cal. May 16, 2019) (taking judicial notice of an attachment to plaintiff's prior amended complaint); *see also Nevada Fleet LLC v. FedEx Corp.*, No. 17-CV-01732-DAD-KJN, 2024 WL 199626, at *9 n.7 (E.D. Cal. Jan. 18, 2024).

3:25-cv-02694-GPC-KSC

While the subject lines and the body of the email cover the same potential discount, a fact finder may consider "a hyperlinked page [within the email] in determining whether misrepresentations in the subject lines were actually material" under Section 17529.5(a)(3). *Subscriberbase*, 2010 WL 1267763, at *5. Given the advertised discount was allegedly not in existence once Plaintiffs' clicked the email's hyperlink, the Court finds that Plaintiffs have plausibly alleged that the emails contained subject lines likely to mislead a recipient. Accordingly, the Court DENIES the motion to dismiss as to this claim.

## II.    Motion to Strike

Defendant argues that the Court should "strike out all of Plaintiffs' theories, or arguments within a theory, that the Court agrees lack merit." As the Court has granted in part and denied in part the motion to dismiss, the Court DENIES the Defendant's motion to strike.

### CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part the Defendant's motion to dismiss the complaint with leave to amend. The Court also DENIES Defendant's motion to strike. Plaintiff shall file an amended complaint within 21 days of the Court's Order.

**IT IS SO ORDERED.**

Dated:  April 23, 2026

Hon. Gonzalo P. Curiel
United States District Judge

3:25-cv-02694-GPC-KSC